# C. ANDREW RILEY *v.* THE TRAVELERS HOME AND MARINE INSURANCE COMPANY
## (SC 19968)

Palmer, McDonald, D'Auria, Mullins, Kahn and Ecker, Js.

### *Syllabus*

Pursuant to the waiver rule, when a trial court denies a defendant's motion for a directed verdict at the close of the plaintiff's case-in-chief, the defendant, by opting to introduce evidence in his or her own behalf, waives the right to appeal from the trial court's ruling on the motion for a directed verdict.

The plaintiff, whose house had been damaged in a fire, sought to recover damages from the defendant insurance company for breach of a home-owner's insurance contract and negligent infliction of emotional distress in connection with the defendant's denial of the plaintiff's claim for insurance coverage. The plaintiff alleged that the defendant refused to

333 Conn. 60        SEPTEMBER, 2019        61

Riley *v.* Travelers Home & Marine Ins. Co.

pay his claim for insurance coverage on the ground that its investigation revealed that the plaintiff intentionally had caused the fire and had concealed or misrepresented the facts and circumstances concerning the fire to the defendant's investigators. The plaintiff further alleged that the defendant was negligent in failing to conduct a reasonable investigation into the cause of the fire. After the plaintiff rested his case, the defendant moved for a directed verdict with respect to the emotional distress claim, claiming that the plaintiff had not presented sufficient evidence to establish negligence in the defendant's investigation into the cause of the fire. The trial court reserved decision on the defendant's motion pursuant to the applicable rule of practice (Practice Book § 16-37), and the defendant thereafter presented its own case. Subsequently, the jury returned a verdict for the plaintiff on both counts, and the defendant moved for judgment notwithstanding the verdict, renewing its claim of evidentiary insufficiency and arguing that the court must decide its motion for judgment notwithstanding the verdict solely on the basis of the evidence submitted during the plaintiff's case-in-chief. The trial court disagreed and, relying primarily on evidence adduced during the defendant's case, concluded that the plaintiff had presented sufficient evidence to support his theory of negligent infliction of emotional distress. Accordingly, the trial court denied the motion for judgment notwithstanding the verdict and rendered judgment for the plaintiff in accordance with the verdict, from which the defendant appealed to the Appellate Court, which affirmed the judgment of the trial court. On the granting of certification, the defendant appealed to this court. *Held*:

1. The record was adequate to review the defendant's claim that the waiver rule is inapplicable in civil cases, such as the present one, in which the trial court reserves decision on a motion for a directed verdict, that claim having been distinctly raised before the trial court: Practice Book § 16-37 treats the trial court's election to reserve decision on a motion for a directed verdict as the equivalent of a denial of that motion for purposes of subsequent proceedings and allows a defendant, in situations in which the jury returns a verdict for the plaintiff after the trial court reserved decision on such a motion, to move to have the verdict set aside and to have judgment rendered in accordance with the defendant's motion for a directed verdict; accordingly, § 16-37 contemplates that the issues raised in a motion for a directed verdict are preserved by and incorporated into the postverdict motion to set aside the verdict, and, in the present case, the defendant, in its motion for judgment notwithstanding the verdict, renewed its claim of evidentiary insufficiency contained in its previously filed motion for a directed verdict and specifically argued in its memorandum in support of its motion for judgment notwithstanding the verdict that the trial court was required to decide the motion solely on the basis of the evidence elicited during the plaintiff's case-in-chief.

Riley *v.* Travelers Home & Marine Ins. Co.

2. The waiver rule applies to civil cases in which the trial court has reserved
   decision on, rather than denied, a motion for a directed verdict pursuant
   to Practice Book § 16-37, the defendant, having presented its own case
   after the trial court reserved decision on its motion for a directed verdict,
   waived it right to challenge the sufficiency of the evidence presented
   during the plaintiff's case-in-chief only, and, accordingly, the trial court
   properly relied on the defendant's evidence in denying its motion for
   judgment notwithstanding the verdict: there was nothing in the language
   of § 16-37 to indicate that a trial court ruling on a motion for judgment
   notwithstanding the verdict is limited to considering the evidence
   adduced during the plaintiff's case-in-chief, as the issue presented by
   both a preverdict motion for a directed verdict and a postverdict motion
   for judgment notwithstanding the verdict is whether, on the basis of all
   the evidence presented to the jury, the evidence was sufficient to support
   the jury's verdict, and a review of the history of the motion for a directed
   verdict and of earlier amendments to the predecessor rule to § 16-37
   further supported the conclusion that the trial court must assess all of
   the evidence considered by the jury in reaching its verdict; moreover,
   although the waiver rule may require the defendant to choose between
   resting on the insufficiency of the plaintiff's proof or presenting its own
   defense, this court concluded that application of the waiver rule under
   the circumstances of the present case was not fundamentally unfair, as
   it merely required the defendant to make a routine, tactical decision,
   the defendant assumed the risk that the evidence it presented would
   have the effect of underscoring the inadequacies of its own investigation
   of the fire, and any burden the rule placed on the defendant was out-
   weighed by the rule's support for the truth seeking function of the trial
   and the perceived fairness of the judicial system.

   Argued November 8, 2018—officially released September 10, 2019

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the Complex Litigation Docket, where the case was tried to the jury before *D. Sheridan, J.*; verdict for the plaintiff; thereafter, the court denied the defendant's motion for judgment notwithstanding the verdict and rendered judgment in accordance with the verdict, from which the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Sheldon* and *Bishop, Js.*, which affirmed the judgment of the trial court, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

333 Conn. 60 SEPTEMBER, 2019 63

Riley *v.* Travelers Home & Marine Ins. Co.

*Linda L. Morkan*, with whom were *Daniel F. Sullivan* and, on the brief, *Jonathan E. Small*, for the appellant (defendant).

*Proloy K. Das*, with whom were *Kristen L. Zaehringer* and, on the brief, *Leonard M. Isaac* and *James J. Nugent*, for the appellee (plaintiff).

*Opinion*

ECKER, J. This appeal concerns a question of civil procedure arising when a jury returns a verdict in favor of the plaintiff that the defendant claims was not supported by sufficient evidence presented during the plaintiff's case-in-chief. Under what has come to be known as the waiver rule, "when a trial court denies a defendant's motion for a directed verdict at the close of the plaintiff's case, the defendant, by opting to introduce evidence in his or her own behalf, waives the right to appeal the trial court's ruling." *Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 756–57, 699 A.2d 81 (1997). The defendant, The Traveler's Home and Marine Insurance Company, contends that the waiver rule is inapplicable to civil cases in which a trial court reserves decision on a motion for a directed verdict pursuant to Practice Book § 16-37.[1] We disagree

---

[1] Practice Book § 16-37 provides: "Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case-in-chief is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. After the acceptance of a verdict and within the time stated in Section 16-35 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his or her motion for a directed verdict; or if a verdict was not returned such party may move for judgment in accordance with his or her motion for a directed verdict within the aforesaid time after the jury has been discharged from consideration of the case. If a verdict was returned, the judicial authority may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.

Riley *v.* Travelers Home & Marine Ins. Co.

and conclude that the waiver rule is applicable regardless of whether a motion for a directed verdict has been reserved for decision or denied. Thus, a court reviewing the sufficiency of the evidence to support a jury's verdict must consider *all* of the evidence considered by the jury returning the verdict, not just the evidence presented in the plaintiff's case-in-chief.

The plaintiff, C. Andrew Riley, commenced this action against the defendant for breach of contract and negligent infliction of emotional distress stemming from the defendant's handling of the plaintiff's homeowner's insurance claim. At the close of the plaintiff's case-in-chief, the defendant moved for a directed verdict on the plaintiff's negligent infliction of emotional distress claim, and the trial court reserved decision on that motion. The defendant then presented evidence in its defense, some of which supported the plaintiff's contention that the defendant had been negligent in its investigation of his homeowner's insurance claim. The jury returned a verdict for the plaintiff on both counts. The defendant timely moved for judgment notwithstanding the verdict, renewing its motion for a directed verdict and requesting the court to set aside the verdict on the claim of negligent infliction of emotional distress and render judgment for the defendant. The trial court, relying primarily on evidence that emerged during the defendant's case, determined that there was sufficient evidence to support the jury's verdict and denied the defendant's motion. The Appellate Court affirmed the trial court's judgment; *Riley* v. *Travelers Home & Marine Ins. Co.*, 173 Conn. App. 422, 462, 163 A.3d 1246 (2017); and we affirm the judgment of the Appellate Court.

If no verdict was returned, the judicial authority may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.''

Riley *v.* Travelers Home & Marine Ins. Co.

I

The Appellate Court summarized the facts and procedural history as follows. "On February 26, 2009, a fire destroyed a significant portion of the plaintiff's home in Pomfret, in which he and his wife, Barbara Riley, had been living and raising their children for more than twenty-five years. On the morning of the fire, the plaintiff was working on a project in a room on the first floor of his home when he received a telephone call from ADT Security Services, his home security service provider, notifying him that it had received an alert that there was a fire in his home. The plaintiff, initially in disbelief, immediately proceeded to the second floor of his home to look for the cause of the alert. Upon ascending the stairs, he saw flames through the open door of a room at the top of the stairs that was used as an office and exercise room, in which he had been exercising earlier that morning. Seeing that the room was engulfed in flames, he initially attempted to close the door but could not get it to stay closed. He thus took an old bathrobe from the adjacent bedroom and draped it over the door to keep it closed. In so doing, the plaintiff sustained a minor burn on his arm. Finally, after retrieving his wife's jewelry from their bedroom, the plaintiff ran back downstairs, confirmed with ADT that there was a fire in his home, and went outside to wait for assistance. Upon the arrival of multiple fire companies, the fire was promptly extinguished. As a result of the fire, the room in which the fire had occurred was essentially destroyed, along with most of its contents, including all of the family's photograph albums, a Mother's Day card to Barbara Riley, a sonogram photo of one of their children, and an uncashed check in the amount of $30,000, which Barbara Riley had received as a work bonus. Although the fire was contained in that one room on the second floor, it caused extensive smoke damage throughout the plaintiff's home.

Riley *v.* Travelers Home & Marine Ins. Co.

"The . . . Pomfret fire marshal, Adam Scheuritzel, arrived at the scene of the fire shortly after it was extinguished. He conducted an investigation of the cause and origin of the fire, using a video camera attached to his helmet to record his investigation. He also took several still photographs of the scene. In addition to inspecting the scene of the fire, Scheuritzel spoke to and obtained written statements from the plaintiff and several firefighters who had responded to the scene. Scheuritzel observed a kerosene heater and a separate container of kerosene in the exercise room where the fire had occurred, but he concluded that the kerosene had played no role in causing the fire. Scheuritzel concluded instead that the cause of the fire had been accidental, having been started by an electrical problem inside the wall of the exercise room.

"The plaintiff immediately notified the defendant of the fire. The defendant, which had issued a homeowner's insurance policy containing standard provisions insuring the plaintiff's property for any loss due to fire, then initiated its own investigation of the cause and origin of the fire, and assigned one of its own employees, John E. Schoener, a trained and certified fire investigator, to conduct that investigation. Schoener concluded that 'the fire originated in the vapors of an ignitable liquid (kerosene) that was poured throughout the floor area and on boxes of stored contents within the room of fire origin. All accidental causes were eliminated as a cause of this fire. The cause of this fire is classified as an incendiary fire.'

"By letter dated May 26, 2009, the defendant denied the plaintiff's claim for insurance coverage, stating that it had 'concluded that [the plaintiff] intentionally caused the fire which resulted in this claim.' The defendant later sent another letter to the plaintiff, dated June 16, 2009, 'to advise [him] of an additional basis for the denial of [his] claim.' The letter stated, '[d]uring the investigation of this loss, [the plaintiff] concealed and/

Riley *v.* Travelers Home & Marine Ins. Co.

or misrepresented material facts and circumstances concerning the loss and made material false statements relating to this loss and to his insurance coverage.' Although the defendant denied the plaintiff's claim, it accepted the claim of Barbara Riley for personal property of herself and other family members, and additional living expenses incurred while repairs were being made to the residence.

"On October 18, 2011, the plaintiff initiated this action against the defendant, claiming breach of contract and negligent infliction of emotional distress. In response, the defendant denied the plaintiff's claims and, by way of special defense, alleged, inter alia, that the plaintiff had intentionally caused the fire to his home and had 'concealed or misrepresented material facts or circumstances, engaged in fraudulent conduct, and/or made materially false statements regarding the fire and insurance claim.' The plaintiff denied the defendant's special defenses.

"The case was tried to a jury in June, 2014. At the conclusion of the plaintiff's case-in-chief, the [defendant's counsel] orally moved for a directed verdict on the plaintiff's claim of negligent infliction of emotional distress." (Footnotes omitted.) *Riley* v. *Travelers Home & Marine Ins. Co.*, supra, 173 Conn. App. 425–28. In support of its motion, the defendant argued "that although the plaintiff's expert witness, Ronald R. Mullen, had testified as to the 'standard of care' for conducting a fire investigation, no evidence was adduced as to any deficiency in its investigation of the fire, and thus the plaintiff had failed to establish a prima facie case of negligence in investigating his claim for insurance coverage, [and], thus, negligent infliction of emotional distress. In response, the plaintiff pointed to the testimony of Scheuritzel and Mullen, who attested to their respective conclusions as to the accidental cause and origin of the fire in the plaintiff's home, as well as the defendant's

Riley *v.* Travelers Home & Marine Ins. Co.

attempts to influence and coerce his experts to change their reports and support its claim of arson. Without reference to specific portions of Mullen's testimony, the plaintiff argued that Mullen had, in fact, pointed to inadequacies in the defendant's investigation. Following that brief argument by counsel, the court concluded: '[A]lthough I've expressed some concerns about the state of the pleadings and the evidence, it does seem to me there's sufficient evidence on this question, if not direct evidence, certainly reasonable inferences where I could reserve on that question pursuant to the Practice Book and we'll proceed to the defendant's case.' '' Id., 432.

After the defendant's presentation of evidence, the jury returned a verdict in favor of the plaintiff. "By way of special interrogatories, the jury rejected the defendant's special defenses and found that the defendant had failed to prove that the plaintiff had intentionally caused the fire to his home or that he had 'intentionally concealed or misrepresented material facts or circumstances, or engaged in fraudulent conduct, or made material false statements relating to his insurance . . . .' The jury found that the plaintiff had proved that the defendant breached his homeowner's insurance contract by denying his claim for coverage and refusing to pay for his losses from the February 26, 2009 fire, and that he had 'sustained [damages] as a result of the [defendant's] negligent infliction of emotional distress . . . .' The jury awarded the plaintiff $504,346.10 in damages for breach of contract and $1,000,000 in damages for negligent infliction of emotional distress." Id. 428–29.

Thereafter, the defendant filed a motion for judgment notwithstanding the verdict and a supporting memorandum of law. "The defendant argued in that motion: 'During [the plaintiff's] case-in-chief, [the] plaintiff failed to present any evidence (other than the letter

Riley *v.* Travelers Home & Marine Ins. Co.

denying his insurance claim) that would permit the jury to reasonably conclude that [the defendant] is liable to him for the negligent infliction of emotional distress. [The] plaintiff chose not to offer expert testimony regarding the integrity of [the defendant's] fire origin and cause investigation, or to call [the defendant's] employees who conducted the investigation to demonstrate their alleged unreasonable or egregious misconduct in the investigation of the fire.' The defendant further argued: '[W]hile [the] plaintiff developed additional evidence regarding [the defendant's] conduct on cross-examination of [the defendant's] employees who testified on behalf of the defense, this evidence and testimony cannot be considered in evaluating whether [the] plaintiff met [his] burden in [his] case-in-chief and in reaching a determination on [the defendant's] motion.' " Id., 433. The trial court disagreed and, after reviewing all of the evidence adduced at trial, including evidence presented during the defendant's case, concluded that the jury's verdict was supported by the evidence. The trial court therefore rendered judgment in accordance with the jury's verdict.

The defendant appealed from the trial court's judgment to the Appellate Court, claiming, among other things, that the trial court "was limited to the evidence adduced during the plaintiff's case-in-chief, which was insufficient to establish the plaintiff's claim . . . ." Id., 429. The Appellate Court rejected the defendant's claim, holding that the defendant "is precluded by the waiver rule from claiming that the trial court was limited in its review of the sufficiency of the evidence to the evidence presented in the plaintiff's case-in-chief. Although the evidence presented by the defendant . . . had the effect of underscoring the inadequacies of its investigation of the fire, that was a risk the defendant assumed when it chose to present defense evidence at trial." Id., 434–35.

Riley *v.* Travelers Home & Marine Ins. Co.

The defendant petitioned for certification to appeal from the judgment of the Appellate Court to this court, and we granted the defendant's petition limited to the following issue: "Under the circumstances of this case, did the Appellate Court correctly hold that, by not resting at the end of the plaintiff's case-in-chief, but instead putting on evidence, the defendant waived its right on appeal to claim that the trial court should have granted its motion for a directed verdict pursuant to Practice Book § 16-37?" *Riley* v. *Travelers Home & Marine Ins. Co.*, 326 Conn. 922, 169 A.3d 234 (2017).

II

The defendant contends that the waiver rule is inapplicable when a trial court reserves decision on a motion for a directed verdict at the close of a plaintiff's case-in-chief pursuant to Practice Book § 16-37. It asserts that the plain language and history of Practice Book § 16-37, as well as the principle of fundamental fairness, require a trial court to consider only the evidence presented in the plaintiff's case-in-chief when deciding a defendant's motion for judgment notwithstanding the verdict based on a claim of insufficient evidence. The plaintiff responds that, among other things, the record is inadequate to review the defendant's claim and the applicability of the waiver rule never has been questioned in civil cases.

The applicable standard of review is not in dispute. "[D]irected verdicts are disfavored because [l]itigants have a constitutional right to have factual issues resolved by the jury." (Internal quotation marks omitted.) *Landmark Investment Group, LLC* v. *CALCO Construction & Development Co.*, 318 Conn. 847, 862, 124 A.3d 847 (2015). Therefore, "[o]ur review of a trial court's refusal to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence,

Riley *v.* Travelers Home & Marine Ins. Co.

including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion." (Internal quotation marks omitted.) *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 50, 873 A.2d 929 (2005). It also is clear that "the proper construction of a Practice Book section involves a question of law [over which] our review is . . . plenary." *State* v. *Zaporta*, 237 Conn. 58, 64 n.5, 676 A.2d 814 (1996).

A

We first address whether the record is adequate to review the defendant's claim that the waiver rule is inapplicable to civil cases in which the trial court has reserved decision on a defendant's motion for a directed verdict pursuant to Practice Book § 16-37. The plaintiff contends that "[t]he defendant's claim is not reviewable because . . . the trial court never actually ruled on its motion for a directed verdict" and this court "cannot review a nonexistent ruling."[2] (Internal quotation marks omitted.) This argument is without merit.

---

[2] Practice Book § 84-11 (a) governs alternative grounds for affirmance in certified appeals, and it provides in relevant part that "[u]pon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the Appellate Court." The plaintiff did not raise or brief his claim regarding the inadequacy of the record in the Appellate Court; nor did he request "special permission" to raise his alternative ground for affirmance in this court. See Practice Book § 84-11 (a) ("[i]f such alternative grounds for affirmation . . . were not raised in the Appellate Court, the party seeking to raise them in the Supreme Court must move for special permission to do so prior to the filing of that party's brief"). Nonetheless, "we have refused to consider" alternative grounds for affirmance not raised in accordance with Practice Book § 84-11 "only in cases in which the opposing party would be prejudiced by consideration of the issue." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 530 n.11, 853 A.2d

Riley *v.* Travelers Home & Marine Ins. Co.

Practice Book § 16-37 expressly provides the procedure to be followed by a trial court when a motion for a directed verdict is not granted. If such a motion "is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." Practice Book § 16-37. The trial court, therefore, may grant the motion, deny the motion, *or reserve decision on the motion.* See *Southern New England Telephone Co.* v. *Pagano*, 79 Conn. App. 458, 466, 830 A.2d 359 (2003) (recognizing that trial court may "delay its decision on a motion for a directed verdict" and need not "immediately deny or immediately grant the motion"); 2 R. Bollier & S. Busby, Stephenson's Connecticut Civil Procedure (3d Ed. 2002) § 195 (d), p. 399 ("[u]nder [§] 16-37 . . . the trial judge can refuse to rule on the motion for a directed verdict and submit the case to the jury")

Practice Book § 16-37 treats the trial court's election to reserve decision as the equivalent of a denial of the motion for purposes of subsequent proceedings, which is why the rule states that the case is deemed to have been submitted to the jury subject to a later determination of the legal questions raised by the motion if, for any reason, "the motion is not granted . . . ." Practice Book § 16-37. In the event that the jury thereafter returns a verdict for the plaintiff, the rule provides what steps the unsuccessful defendant may take to renew any legal claim previously raised in its motion for a directed verdict: "After the acceptance of a verdict and within the time stated in Section 16-35 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any

105 (2004). The defendant does not allege in its reply brief that it would be prejudiced by our consideration of the plaintiff's alternative ground for affirmance regarding the adequacy of the record and, therefore, we consider the merits of the plaintiff's claim. See id.

Riley *v.* Travelers Home & Marine Ins. Co.

judgment rendered thereon set aside and have judgment rendered in accordance with his or her motion for a directed verdict . . . .''[3] Practice Book § 16-37.

When the foregoing procedure is followed, as it was in the present case, Practice Book § 16-37 provides that ''the judicial authority may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.'' There is no need under these circumstances for the trial court to go back and rule on the reserved motion for a directed verdict, because the legal issues raised in that motion were preserved and incorporated into a properly filed motion for judgment notwithstanding the verdict. Thus, the trial court's ruling on that postverdict motion becomes the controlling disposition for purposes of appeal.[4] The

---

[3] The inverse proposition also holds true, which means that ''[a] motion for a directed verdict is a prerequisite to the filing of a motion to set aside the verdict.'' *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 49, 717 A.2d 77 (1998).

[4] Our procedural rules tie the preverdict motion for a directed verdict to the postverdict motion to set aside a verdict because the parties have ''a constitutional right to have factual issues resolved by the jury.'' (Internal quotation marks omitted.) *Landmark Investment Group, LLC* v. *CALCO Construction & Development Co.*, supra, 318 Conn. 862; see also footnote 3 of this opinion. ''By requiring the motion for a directed verdict, the fiction is preserved that the judge, in ruling on the motion after verdict, is really giving a delayed decision on the motion for a directed verdict.'' 2 R. Bollier & S. Busby, supra, § 195 (b), p. 396; see also *Salaman* v. *Waterbury*, 44 Conn. App. 211, 216, 687 A.2d 1318 (1997) (''The purpose of this rule of specificity is to prohibit reconsideration of the factual basis of a jury's verdict unless that verdict is accepted subject to the trial court's reserved ruling on a particular claim of legal sufficiency. This reserved ruling on a specific claim satisfies the constitutional prohibition that would otherwise preclude judicial reexamination of factual matters decided by the jury. Further, as a practical matter, the rule serves to ensure that a party against whom a motion for a directed verdict is directed and the trial court have sufficient notice of the alleged deficiency of proof so as possibly to cure it without necessitating a new trial.''), rev'd on other grounds, 246 Conn. 298, 717 A.2d 161 (1998). Thus, under Practice Book § 16-37, the trial court's decision on a motion for judgment notwithstanding the verdict ''relate[s] back so as to be effective prior to the retirement of the jury.'' (Internal quotation marks

Riley *v.* Travelers Home & Marine Ins. Co.

appeal itself is taken from the judgment rendered by the trial court after it denied the motion for judgment notwithstanding the verdict and disposed of any other pending motions that may require a ruling before the judgment becomes final. See, e.g., General Statutes § 52-263; Practice Book § 61-1; see also *Hylton* v. *Gunter*, 313 Conn. 472, 478–84, 97 A.3d 970 (2014) (discussing operation of final judgment rule in context of various postverdict motions); *Tough* v. *Ives*, 159 Conn. 605, 606, 268 A.2d 371 (1970) ("[u]ntil there is a final judgment or the court has granted the motion to set aside the verdict, there is no right of appeal").

In the present case, the defendant's counsel made an oral motion for a directed verdict after the plaintiff's case-in-chief. In response, the trial court "reserve[d]" decision on the defendant's motion and "proceed[ed] to the defendant's case." After the defendant presented evidence and the jury returned a verdict in favor of the plaintiff, the defendant renewed the claim of evidentiary insufficiency contained in its previously filed motion for a directed verdict. The defendant's supporting memorandum of law, moreover, specifically argued that its motion for judgment notwithstanding the verdict must be decided solely on the basis of the evidence submitted during the plaintiff's case-in-chief.

omitted.) 2 R. Bollier & S. Busby, supra, § 195 (a), p. 395; see also *Baltimore & Carolina Line, Inc.* v. *Redman*, 295 U.S. 654, 659–60, 55 S. Ct. 890, 79 L. Ed. 1636 (1935) ("At common law there was a well established practice of reserving questions of law arising during trials by jury and of taking verdicts subject to the ultimate ruling on the questions reserved; and under this practice the reservation carried with it authority to make such ultimate disposition of the case as might be made essential by the ruling under the reservation, such as [nonsuiting] the plaintiff where he had obtained a verdict, entering a verdict or judgment for one party where the jury had given a verdict to the other, or making other essential adjustments. Fragmentary references to the origin and basis of the practice indicate that it came to be supported on the theory that it gave better opportunity for considered rulings, made new trials less frequent, and commanded such general approval that parties litigant assented to its application as a matter of course." [Footnote omitted.]).

Riley *v.* Travelers Home & Marine Ins. Co.

This procedural history reveals that the defendant's claim regarding the sufficiency of the plaintiff's evidence and the applicability of the waiver rule was distinctly raised at trial and, therefore, is preserved for our review.[5] The defendant has provided this court with all of the material that we need to review its claim on appeal—the trial court's written memorandum of decision on the defendant's motion for judgment notwithstanding verdict, the transcript of the trial proceedings, and the exhibits submitted to the jury. See Practice Book §§ 63-4, 63-8, and 64-1. Accordingly, we find no merit to the plaintiff's contention that the record is inadequate for our review.

B

The question presented in this appeal is whether the waiver rule applies to civil cases in which the trial court has reserved decision on a motion for a directed verdict pursuant to Practice Book § 16-37. We conclude that it does. In resolving this question, it is significant to our consideration that the waiver rule applies in criminal cases. See, e.g., *State* v. *Perkins*, 271 Conn. 218, 231, 856 A.2d 917 (2004) (holding that "the waiver rule is followed in this state"). In *Perkins*, we recognized that "the waiver rule presents [a] defendant with a difficult dilemma"; id., 243; because it forces him or her "to choose between waiving the right to [present] a defense and waiving the right to put the state to its proof." (Internal quotation marks omitted.) Id., 229. We held that this dilemma was neither unfair; id., 243–44; nor did it deprive the defendant of his constitutional rights. Id., 232–37. Rather, "the question faced by the defendant essentially is tactical in nature, and . . . the truth seeking function of the criminal trial trumps the propriety

---

[5] See Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"); see also *Murphy* v. *EAPWJP, LLC*, 306 Conn. 391, 399, 50 A.3d 316 (2012) ("[i]t is well established that a claim must be distinctly raised at trial to be preserved for appeal").

vel non of the ruling on the defendant's motion.'' Id., 244. The court in *Perkins* explained that the waiver rule is followed because it ''supports fact-finding and the ultimate truth seeking function of a trial.'' Id., 237–38. Specifically, the waiver rule ''eliminates the bizarre result that could occur in its absence, namely, that a conviction could be reversed for evidentiary insufficiency, despite evidence in the record sufficiently establishing guilt.'' Id., 238. ''Consider, for example, a case in which, after [an improper] denial [of a motion for judgment of acquittal], the defendant testifies and, under skillful cross-examination, admits, either explicitly or implicitly, his guilt of the crime charged. It hardly can increase public respect for the criminal process for an appellate court to set that defendant free because the trial court erroneously denied his motion for a judgment of acquittal at an earlier stage of the trial. In such a case, in our view, that denial becomes, by virtue of the defendant's own evidence, immaterial error.'' (Internal quotation marks omitted.) Id., 245 n.31. To hold otherwise would result in ''a perception of the criminal trial as a sporting event in which the rules of the game trump the search for truth.'' Id., 245.

In arriving at our conclusion in *Perkins*, we rejected the claim of the defendant, Benjamin J. Perkins, that the waiver rule effectively had been repealed in criminal cases by Practice Book §§ 42-40 and 42-41, which require the trial court to order the entry of a judgment of acquittal when the state adduces insufficient evidence of guilt. Id., 239–41. We pointed out that the rules of practice ''[shed] no light on how this court is required *to review* the sufficiency of the evidence following the trial court's denial of such a motion and a jury's verdict of guilty.'' (Emphasis in original.) Id., 240–41. ''[O]nce a case is submitted to a jury, however erroneously, and the jury returns a verdict of guilty, review of the evidence ought to be on the basis of that evidence that

Riley *v.* Travelers Home & Marine Ins. Co.

was before the jury. . . . After all, on an appeal claiming insufficiency of the evidence following a jury's verdict of guilty, it is the propriety of the jury's verdict that we are reviewing, not the propriety of the trial court's submission of the case to the jury. We simply conclude that, when a reviewing court is faced with a choice between two records—one encompassing some of the evidence presented at trial and one encompassing all of the evidence presented at trial—the latter is the preferable record on which to determine whether a defendant is entitled to a reversal of his conviction.'' (Citation omitted.) Id., 241–42.

The court also rejected Perkins' contention that the waiver rule should not apply because he was charged with multiple crimes and ''could not present exculpatory evidence with respect to [one of the charges] without also introducing, or allowing the state to draw out, potentially inculpatory evidence with respect to . . . other charges.'' Id., 242. We explained that it was Perkins' ''choice, as a matter of trial strategy, to inject into the trial whatever issues that he concluded would be beneficial to his defense. Conversely, [Perkins] was free to avoid any issues on direct examination that he did not want drawn out by the state. . . . [Perkins] also was free to, and did not, request a severance of the charges against him . . . .'' (Citation omitted.) Id. Regardless, the conflicting ''pressures'' faced by a defendant charged with multiple crimes ''do not outweigh the truth seeking interest, *on appeal*, in reviewing the record as it was presented to the jury.'' (Emphasis in original.) Id., 243.

The defendant here contends that *Perkins* is distinguishable from the present case because, unlike in criminal cases, in which a trial court is required to rule on a motion for judgment of acquittal filed at the close of the state's case-in-chief, in civil cases, our rules of practice provide the trial court with the option of reserv-

Riley *v.* Travelers Home & Marine Ins. Co.

ing decision on a motion for a directed verdict. Compare Practice Book § 16-37 (when motion for directed verdict made after close of plaintiff's case-in-chief is denied or otherwise not granted, trial court "is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion"), with Practice Book § 42-41 (requiring trial court to "grant or deny the motion [for judgment of acquittal] before calling upon the defendant to present the defendant's case-in-chief"). The defendant argues that the reservation option in Practice Book § 16-37 "essentially force[s] a defendant to choose between resting [its case] and being deprived of the benefits of the motion." We are not persuaded for three reasons.

First, as a historical matter, the waiver rule has deeper roots in civil procedure than in criminal procedure. See *State* v. *Perkins*, supra, 271 Conn. 271 (*Katz, J.*, dissenting) (noting that "the waiver rule was imported from the civil to the criminal sphere along with the motion for [a] directed verdict itself" [internal quotation marks omitted]). Although "courts in a number of other jurisdictions have . . . questioned the validity of the waiver rule [in the criminal context]"; *State* v. *Rutan*, 194 Conn. 438, 442, 479 A.2d 1209 (1984); its validity in the civil context never has been subject to doubt in Connecticut. See *Sears, Roebuck & Co.* v. *Board of Tax Review*, supra, 241 Conn. 757 ("we have never questioned its applicability in the civil context"); *Elliott* v. *Larson*, 81 Conn. App. 468, 472, 840 A.2d 59 (2004) (finding "no reason why the rationale underlying the 'waiver rule' should not operate in this case"); *In re James L.*, 55 Conn. App. 336, 341, 738 A.2d 749 (same), cert. denied, 252 Conn. 907, 743 A.2d 618 (1999).

Second, we can discern nothing in the distinction between a trial court's reservation of decision on a motion for a directed verdict and its denial of such a motion that bears on the right to obtain appellate review

333 Conn. 60        SEPTEMBER, 2019              79

Riley *v.* Travelers Home & Marine Ins. Co.

of the trial court's refusal to grant that motion.[6] Regardless of whether a motion for a directed verdict has been reserved or denied, "the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." Practice Book § 16-37.

[6] The defendant argues that the distinction between reservation and denial "is critically important to the issue of appellate review" pursuant to *State* v. *Higgins*, 74 Conn. App. 473, 811 A.2d 765, cert. denied, 262 Conn. 950, 817 A.2d 110 (2003). *Higgins*, however, provides no support for the defendant's position. In *Higgins*, the defendant moved for a judgment of acquittal at the close of the state's case-in-chief, and the trial court improperly reserved decision on the defendant's motion, even though our criminal rules of practice "specifically [direct] the court either to grant or to deny" the motion, and there is "no . . . discretion" to reserve decision. Id., 480; see Practice Book § 42-41 (requiring trial court to "either grant or deny the motion [for a judgment of acquittal] before calling upon the defendant to present the defendant's case-in-chief"). Because our rules of practice do not permit a trial court to reserve decision on a midtrial motion for a judgment of acquittal, the Appellate Court declined to apply the waiver rule "to avoid prejudicing the defendant . . . ." *State* v. *Higgins*, supra, 481. Thus, the Appellate Court considered "only the evidence that was presented by the state in its case-in-chief" to evaluate the sufficiency of the evidence to support the defendant's conviction. Id.

The Appellate Court in *Higgins* declined to apply the waiver rule because it sought to remedy a *procedural* error that occurred when the trial court improperly reserved decision on the defendant's midtrial motion for judgment of acquittal. The remedy was appropriate because the trial court's failure to issue a decision, when required to do so, inherently was prejudicial to the defendant. See id.; cf. *United States* v. *Rhodes*, 631 F.2d 43, 44–45 (5th Cir. 1980) (declining to apply waiver rule when trial court impermissibly reserved decision on motion for judgment of acquittal filed "at the close of the [g]overnment's case" because "application of any other rule would penalize a defendant for a trial court's refusal to issue a ruling at the time clearly required by our previous cases"); *United States* v. *House*, 551 F.2d 756, 760 (8th Cir.) (declining to apply waiver rule when trial court impermissibly reserved decision on midtrial motion for judgment of acquittal because, "[o]therwise, the defendant would lose the right to have the sufficiency of the evidence against him adjudged at the close of the government's case even though he expressly sought to have the evidence considered and even though the [r]ule expressly grants him that right"), cert. denied, 434 U.S. 850, 98 S. Ct. 161, 54 L. Ed. 2d 119 (1977). In contrast, our civil rules of practice explicitly authorize the trial court to reserve decision on a motion for a directed verdict filed at the close of the plaintiff's case-in-chief. See Practice Book § 16-37. Accordingly, *Higgins* is inapposite.

Third, the rules of practice do not shed any "light on how this court is required *to review* the sufficiency of the evidence . . . ." (Emphasis in original.) *State* v. *Perkins*, supra, 271 Conn. 240–41. "After all, on an appeal claiming insufficiency of the evidence following a jury's verdict . . . it is the propriety of the jury's verdict that we are reviewing, not the propriety of the trial court's submission of the case to the jury." Id., 241. The parties have a "constitutional right to have factual issues resolved by the jury," and, once the jury has resolved those factual issues, judicial review must take place within "carefully defined parameters." (Internal quotation marks omitted.) *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 296 Conn. 315, 336, 994 A.2d 153 (2010). Those parameters require us to "consider the evidence in the light most favorable to the [prevailing party]" and to uphold a jury's verdict when "it is apparent that there was some evidence upon which the jury might reasonably reach [its] conclusion . . . ." (Internal quotation marks omitted.) *Salaman* v. *Waterbury*, 246 Conn. 298, 304, 717 A.2d 161 (1998). It is for this reason that the trial court must consider *all* of the evidence before the jury, including the defendant's evidence, in deciding whether "the evidence supports the jury's determination." (Emphasis omitted.) *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, supra, 347.

Nonetheless, the defendant contends that the waiver rule is inconsistent with the plain language and history of Practice Book § 16-37 and is "fundamentally unfair . . . in civil cases . . . in which a plaintiff has pleaded multiple claims and the defendant has pleaded counterclaims or special defenses . . . ." We find no merit in either argument.

Practice Book § 16-37 provides that "[w]henever a motion for a directed verdict made at any time after the close of the plaintiff's case-in-chief is denied or

Riley *v.* Travelers Home & Marine Ins. Co.

for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of *the legal questions* raised by the motion.'' (Emphasis added.) The defendant claims that the ''legal [question]'' raised by a midtrial motion for a directed verdict on the basis of the insufficiency of the evidence is the sufficiency of *the plaintiff's* proof, rather than the sufficiency of all of the evidence. Thus, the defendant argues that the trial court's ''later determination of the legal [question] raised by the motion''; Practice Book § 16-37; in a motion for judgment notwithstanding the verdict also must be limited to the sufficiency of the plaintiff's proof, without regard to the evidence presented later in the trial. We disagree.

''Our interpretation of the rules of practice is a question of law subject to plenary review.'' *State* v. *Jones*, 314 Conn. 410, 418, 102 A.3d 694 (2014). ''The rules of statutory construction apply with equal force to [the rules of practice]. . . . Where the meaning of a statute [or rule] is plain and unambiguous, the enactment speaks for itself and there is no occasion to construe it. Its unequivocal meaning is not subject to modification by way of construction. . . . If a statute or rule is ambiguous, however, we construe it with due regard for the authors' purpose and the circumstances surrounding its enactment or adoption.'' (Citations omitted; internal quotation marks omitted.) *Grievance Committee* v. *Trantolo*, 192 Conn. 15, 22, 470 A.2d 228 (1984).

The legal question raised by a motion for a directed verdict challenging the legal sufficiency of the evidence, and by a motion for judgment notwithstanding the verdict raising those same grounds, is not the sufficiency of the plaintiff's proof alone; it is whether ''[a] directed verdict is justified [because] on the evidence the jury reasonably and legally could not have reached any

Riley *v.* Travelers Home & Marine Ins. Co.

other conclusion.'' *Gagne* v. *Vaccaro*, 255 Conn. 390, 400, 766 A.2d 416 (2001). Although the evidence before the jury may differ depending on the procedural posture of the case at the time the defendant's motion is filed, the legal question remains the same. Nothing in the language of Practice Book § 16-37 suggests that a trial court adjudicating a postverdict motion for judgment notwithstanding the verdict may ignore evidence elicited during the defendant's case when deciding the legal question of evidentiary sufficiency after the jury has spoken. To determine the sufficiency of the evidence, the trial court necessarily must assess *all* of the evidence on which the jury could ''make its finding[s] . . . irrespective of the source from which that evidence comes.'' *Cinque* v. *Orlando*, 140 Conn. 591, 593, 102 A.2d 532 (1954). We therefore reject the defendant's contention that the waiver rule is inconsistent with the plain language of Practice Book § 16-37.

Our construction of Practice Book § 16-37 is supported by the common-law history of the motion for a directed verdict, a background that informs our understanding of the purpose and operation of the rule of practice as it exists today. The motion for a directed verdict entered into civil practice during the nineteenth century and initially could be made only at the close of all the evidence. See *DiBiase* v. *Garnsey*, 104 Conn. 447, 451, 133 A. 669 (1926) (motion for directed verdict ''can be moved only at the conclusion of the evidence offered by both parties''); T. Phillips, Comment, ''The Motion for Acquittal: A Neglected Safeguard,'' 70 Yale L. J. 1151, 1152 (1961) (''[i]n the [nineteenth] century judges began to utilize the directed verdict in civil cases''). A defendant who wished to move for a directed verdict at the close of the plaintiff's case was required first to rest his case, thereby forfeiting the right to present any evidence.[7] See *Jacobs* v. *Connecticut Co.*,

_____

[7] At common law, civil defendants wishing to challenge the sufficiency of the evidence at the close of the plaintiff's case were required to demur

Riley *v.* Travelers Home & Marine Ins. Co.

137 Conn. 189, 190–92, 75 A.2d 427 (1951) (holding that trial court improperly allowed defendant to move for directed verdict without first resting its case).

In 1978, the drafters of the Practice Book adopted two significant changes to the rules of practice governing directed verdicts, and these changes have remained in effect to this day.[8] First, a defendant no longer is

to the evidence, a procedure that precluded the defendant from presenting any evidence thereafter. This practice posed a great risk to defendants because, if the motion was denied, the court immediately rendered judgment for the plaintiff. See T. Phillips, supra, 70 Yale L. J. 1151. In 1852, the General Assembly passed a statute giving defendants the option of pursuing what was called an evidentiary nonsuit. See General Statutes (1888 Rev.) § 1109 ("[w]hen on the trial of any issue in fact, in a civil action, the plaintiff shall have produced his evidence and rested his cause, the defendant may move for judgment as in case of non-suit, and the court may grant such motion, if in its opinion, the plaintiff shall have failed to make out a prima facie case"). The court's decision to deny a motion for evidentiary nonsuit was discretionary and not subject to appeal. See *Bennett* v. *Agricultural Ins. Co.*, 51 Conn. 504, 512 (1884). The statute permitting a motion for evidentiary nonsuit still exists today; see General Statutes § 52-210; but, as a practical matter, the motion has fallen into disuse and has been replaced by the motion for a judgment of dismissal. See *Thomas* v. *West Haven*, 249 Conn. 385, 391, 734 A.2d 535 (1999) ("[a] motion for judgment of dismissal has replaced the former motion for nonsuit for failure to make out a prima facie case" [internal quotation marks omitted]), cert. denied, 528 U.S. 1187, 120 S. Ct 1239, 146 L. Ed. 2d 99 (2000).

[8] Compare Practice Book (1978) § 321 ("Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case in chief is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."), with Practice Book § 16-37 ("Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case-in-chief is denied or for any reason is not granted, the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. After the acceptance of a verdict and within the time stated in Section 16-35 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment

Riley *v.* Travelers Home & Marine Ins. Co.

required to wait until the close of all of the evidence to move for a directed verdict—a motion for a directed verdict may be made "at any time after the close of the plaintiff's case in chief . . . ." Practice Book (1978) § 321 (now § 16-37). Second, a defendant no longer must rest his own case prior to moving for a directed verdict— a defendant may "offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made." Practice Book (1978) § 321 (now § 16-37). The purpose of these changes was to end the "unfair" common-law requirement that a party moving for a directed verdict must first rest his case and thereby forfeit the opportunity to present evidence on his own behalf. See R. Ciulla & R. Allen, "Comments on New Practice Book Revisions," 4 Conn. L. Trib., No. 40, October 2, 1978, p. 3 ("Previously, if a defendant made a motion for a directed verdict after the close of [the] plaintiff's case, and if the motion was not granted, the defendant was foreclosed from introducing any evidence in support of his case. A motion for [nonsuit] was available to raise the same legal issues but was less effective since, if granted, the plaintiff had another year to bring his action again in an attempt to make out a prima facie case. [The revised rule of practice] therefore eliminates an unfair situation with which defendants were frequently confronted.").[9]

---

rendered in accordance with his or her motion for a directed verdict; or if a verdict was not returned such party may move for judgment in accordance with his or her motion for a directed verdict within the aforesaid time after the jury has been discharged from consideration of the case. If a verdict was returned, the judicial authority may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned, the judicial authority may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.").

[9] Another purpose behind the rule change was to facilitate the systemic efficiency that can be gained in circumstances in which the trial court is able to reserve decision if it harbors any doubt about the proper disposition of the motion for a directed verdict. By reserving decision and allowing the case to proceed to verdict when such doubt exists, the trial court safeguards

Riley *v.* Travelers Home & Marine Ins. Co.

The changes adopted in 1978 eliminated the most severe risk associated with the common-law procedure governing motions for directed verdicts, because the defendant no longer was required to bet his case on a favorable ruling. The innovation did not eliminate altogether, however, the need for a defendant to make strategic choices before utilizing the procedure. Although a defendant no longer is required to rest his case before filing a motion for a directed verdict under Practice Book § 16-37, a defendant who opts to present additional evidence after the reservation or denial of such a motion "undertakes a risk that the testimony of defense witnesses will fill an evidentiary gap in the [plaintiff's] case." (Internal quotation marks omitted.) *Sears, Roebuck & Co.* v. *Board of Tax Review*, supra, 241 Conn. 757; see also 9A C. Wright & A. Miller, Federal Practice and Procedure (2d Ed. 1995) § 2534, p. 324 (Under rule 50 of the Federal Rules of Civil Procedure, renewed motions for directed verdict "will be judged in the light of the case as it stands at that time. Even though the court may have erred in denying the initial motion, this error is cured if subsequent testimony on

the efficiency of the system because, if the jury returns a verdict for the plaintiff, and if the trial court thereafter grants the defendant's renewed motion in the form of a motion for judgment notwithstanding the verdict, then reversal of that judgment on appeal will result in the reinstatement of the jury verdict rather than a new trial. See W. Horton et al., 1 Connecticut Practice Series: Superior Court Civil Rules (2018–2019 Edition) § 16-37, author's comments, p. 752 ("[T]he trial court may . . . reserve decision on any motion for directed verdict until after the verdict has been returned. . . . That way if the trial judge erroneously grants the motion, the Supreme Court can direct judgment on the verdict rather than ordering a new trial." [Citation omitted.]); see also 2 R. Bollier & S. Busby, supra, § 195 (d), p. 399 ("Under [§] 16-37 . . . the trial judge can refuse to rule on the motion for a directed verdict and submit the case to the jury. If . . . the appellate court agree[s] with the jury, judgment can be entered on the verdict. If, however, it now appears that the verdict should have been directed, a new trial is no longer the only remedy. Judgment can now be ordered in favor of the party for whom a verdict should have been directed."). The procedural option to reserve decision on a motion for a directed verdict therefore serves an important purpose—just not the purpose advocated by the defendant.

Riley *v.* Travelers Home & Marine Ins. Co.

behalf of the moving party repairs the defects in the opponent's case."). Indeed, "[i]t not infrequently happens that the defendant himself, by his own evidence, supplies the missing link" in the plaintiff's proof, and, having done so, "the court and jury have the right to consider the whole case as made by the testimony." *Bogk* v. *Gassert*, 149 U.S. 17, 23, 13 S. Ct. 738, 37 L. Ed. 631 (1893); see also *Sears, Roebuck & Co.* v. *Board of Tax Review*, supra, 757 ("[o]n appeal in such cases, the question becomes whether . . . there is evidence in the entire record to justify submitting the matter to a trier of fact" [emphasis omitted; internal quotation marks omitted]). As we held in *Perkins*, once a case is submitted to a jury and the jury returns a verdict, a court's review of the sufficiency of the evidence must be on the basis of "*all* of the evidence on which the jury relied . . . ." (Emphasis in original.) *State* v. *Perkins*, supra, 271 Conn. 245.

Lastly, we reject the defendant's contention that the waiver rule is fundamentally unfair in civil cases, such as this one, in which a plaintiff has raised multiple claims and a defendant has asserted multiple special defenses. Although we recognize that "the waiver rule presents [a] defendant with a difficult dilemma, we disagree that it is an 'unfair' dilemma." *State* v. *Perkins*, supra, 271 Conn. 243. As we recognized in *Perkins*, litigation is "replete with situations requiring the making of difficult judgments as to which course to follow." (Internal quotation marks omitted.) Id., 233. A defendant whose motion for a directed verdict has been reserved for decision or improperly denied must choose whether to rest on the alleged insufficiency of the plaintiff's proof or risk filling in the gaps in the plaintiff's evidence by presenting evidence in support of his special defenses, but such a routine "tactical" decision never "has been regarded as unfair."[10] Id., 243–44. The

---

[10] To the extent that unfairness may exist, a defendant may move to bifurcate the trial of a plaintiff's claims. See General Statutes § 52-205 ("[i]n

Riley *v.* Travelers Home & Marine Ins. Co.

circumstances may require a defendant with the hope of prevailing as a matter of law, on grounds of evidentiary insufficiency, to exercise additional care when choosing how narrowly to confine its own evidentiary presentation, but difficult choices of this nature are routinely faced by trial lawyers, and we do not consider the choices required in the present context especially unusual or unfair. In any event, it is clear to us that whatever difficulty arises as a result of the defendant's tactical decision is substantially outweighed "by the truth seeking function of the . . . trial" and the "perceived fairness of the judicial system as a whole . . . ." (Internal quotation marks omitted.) Id., 244. This conclusion gains additional force when we consider that we have upheld the fundamental fairness of the waiver rule in the criminal context, in which a defendant's personal liberty is at stake and constitutional protections are implicated. See id., 232–37. We perceive no reason to conclude otherwise in the context of a civil action.

Accordingly, we hold that the defendant waived its right to challenge the sufficiency of the evidence in the plaintiff's case-in-chief, and the trial court properly relied on the defendant's evidence when it denied the defendant's motion for judgment notwithstanding the verdict.[11] The following observation of the Appellate Court aptly summarizes our own view: "[T]he defendant is now bound by its choice to roll the proverbial dice

all cases, whether entered upon the docket as jury cases or court cases, the court may order that one or more of the issues joined be tried before the others"); Practice Book § 15-1 (same). The defendant in the present case never moved to bifurcate the trial of the plaintiff's breach of contract claim from the trial of his negligent infliction of emotional distress claim, and we express no opinion whether bifurcation would have been appropriate if such a motion had been filed.

[11] In light of our conclusion, we need not reach the plaintiff's alternative argument that "there was sufficient evidence in the plaintiff's case-in-chief to support the tort of negligent infliction of emotional distress."

by presenting its own evidence at trial" and "cannot claim error as to the trial court's prior denial [of its motion for judgment notwithstanding the verdict], based solely [on] the evidence presented in the plaintiff's case-in-chief, of its midtrial motion for a directed verdict." *Riley* v. *Travelers Home & Marine Ins. Co.*, supra, 173 Conn. App. 435. The defendant does not challenge the sufficiency of *all* of the evidence to support the jury's verdict, and, therefore, we conclude that the Appellate Court properly affirmed the judgment of the trial court denying the defendant's motion for judgment notwithstanding the verdict.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

————————————————